## WALLIS *v.* WALLIS

[No. 325, September Term, 1963.]

34

*Decided May 7, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*J. Hodge Smith,* for the appellant.

Miss *Kathryn E. Diggs* for the appellee.

Marbury, J., delivered the opinion of the Court.

This is an appeal from that portion of a decree dated January 17, 1964, awarding custody of two minor children to the mother incident to the granting of a divorce *a vinculo matrimonii* to the father on the ground of the wife's adultery.

The evidence may be summarized as follows. The parties were married in 1948 and two children were born of the marriage, a boy thirteen and a girl nine at the time of the taking of testimony in open court. During the years the parties gradually drifted apart. The husband is a successful business man of exemplary habits and morals. He is a Junior Warden of his church, does not drink, and generally preferred the company of his children and the comforts of his home to an active social life. The wife, on the other hand, sought an active social life and might be characterized as an inordinate social drinker. Frequent arguments ensued between the parties until in November 1961 the wife told her husband she no longer loved him and wished him to leave the marital abode. He obliged, taking up temporary residence in a hotel, but continued to visit the home frequently. Sexual relations continued until April of 1962 and the parties occupied the same bedroom as late as August or September of that year. Marital relations ceased after a telephone conversation in the early hours of one morning when the wife called the husband at the hotel and attempted to induce him to return to the house and spend the night with her but declined his offer of a complete reconciliation. Under these circumstances, he refused, but did continue his frequent visits with the children at the house and made another unsuccessful attempt at a reconciliation in November of 1962. Then he found a compromising letter from a man to his wife, and when he confronted her with it, forced from her an admission of adultery, which she later freely admitted in open court.

After this episode he retained the services of private investigators who, together with him, observed the wife's actions dur-

ing the month of December 1962 with a second admitted paramour, named "Ed." The wife also admitted she would marry a man like "Tom," an acquaintance of both of the parties who had shown an interest in her, though she denied having an affair with him. In addition, she admitted receiving a love letter from a fourth person proposing marriage.

At the same time appellee was engaged in an affair with one man, she accepted an expensive gift from another admirer who had changed his will so as to leave her a substantial part of his estate. During December of 1962 she entertained the latest paramour several evenings in the home with the children there, and it was often that he did not leave until after 3:00 a.m. A final example of the wife's attitude, though there might be others cited, is that she permitted another married friend, engaged in an amorous affair with a service man, to .use her home as a "mail drop" to which a marine could send her letters.

Based upon the foregoing facts and circumstances the appellant contends the court erred in awarding custody of the two minor children to the adulterous mother where the evidence was uncontradicted that he was an entirely fit and proper person and worthy of their custody. We agree.

The overriding consideration in determining to whom the custody of a child should be awarded is, we have consistently held, the best interests and welfare of the child. *Glick v. Glick,* 232 Md. 244, 192 A. 2d 791; *Hild v. Hild,* 221 Md. 349, 157 A. 2d 442. These cases, and many others which could be cited, state also a correlative rule that unless the mother is unfit, other things being equal, preference is given to her in awarding custody of young children, as she is considered to be the natural custodian of the young. *Parker v. Parker,* 222 Md. 69, 158 A. 2d 607; *Hild v. Hild, supra.* The cases state that ordinarily where a divorce is awarded on the ground of the mother's adultery, the father, if he is shown to be a proper person, is granted custody of children of tender years. The *ratio decidendi* of this rule, which reaches as far back in our decisions as *Pangle v. Pangle,* 134 Md. 166, 106 Atl. 337, is not punishment to the wayward parent nor reward to the virtuous parent. Rather, the rule is based upon the presumption

that the adultery is a highly persuasive indicium that the guilty party does not meet the test, when unfortunately a choice must be made between parents, of which is the better suited to bear responsibilities of rearing the children.

The presumption is one of fact, not law, and the rule is thus not absolute. In at least two cases coming before this Court we have permitted an adulteress to have custody of a minor child. *Wood v. Wood,* 227 Md. 112, 175 A. 2d 573; *Oliver v. Oliver,* 217 Md. 222, 140 A. 2d 908. However, there were circumstances in both those cases which distinguish them from the instant one. In both, the record, as presented to us, showed that the adulterous relationship had ceased. In *Wood* the former husband had, subsequent to the divorce, been hospitalized in a psychiatric ward. The former wife had married her paramour and was pursuing a way of life above reproach in Connecticut at the time she sought to obtain custody of the child. In *Oliver* the former paramour moved to the middle west, and there was evidence that the wife had reformed her ways.

It is the total absence of evidence that Mrs. Wallis has changed her pattern of life that makes this case different. Indeed, she has not stopped seeing the paramour who pays the rent on the house she now occupies with the children, but whether she intends to marry this particular man is not disclosed in the record, and her history of carrying on more than one affair at a time makes her future highly uncertain.

The chancellor in her opinion found that there was no question about the wife's adultery and conversely that the husband was of high moral caliber. Her findings of fact are entitled to great weight, just as in any other nonjury case. Maryland Rule 886 a. However, we think that in applying the applicable law of this State to these facts the lower court was in error. While it was proper for the court to consider the wishes of the children, whom she interviewed in chambers, we think the chancellor's opinion itself reflects that she was overly impressed by the interview with them. The children had been in the mother's care and it was obvious that they had been counseled, in the language of the opinion, "in her own interest." On the other hand, the husband had made no effort to

influence the children against their mother. We think the strong showing necessary to overcome the usual rule against awarding custody to an adulterous mother had not been met, and therefore the portion of the decree awarding custody and support and maintenance of the minor children to the mother must be reversed and their custody awarded to the appellant, with reasonable rights of visitation to the appellee.

> *Decree reversed in part and case remanded for further proceedings in accordance with this opinion. Costs to be paid by appellant.*