# TAYLOR *v.* TAYLOR

[No. 673, September Term, 1966.]

*Decided May 5, 1967.*

The cause was argued before HORNEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*William E. Brooke,* for appellant.

*Selma W. Samols,* with whom was *Roberta Johnson* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

Plaintiff-appellee, Irving A. Taylor, and defendant-appellant, Elaine R. Taylor, were married on July 29, 1956 in Washington, D. C. Two children were born of this union. On October 22, 1964, the Superior Court of the State of California in and for Los Angeles County awarded custody of the two children to the appellant. On March 24, 1965, appellant was granted an interlocutory judgment of divorce, which provided for certain elaborate visitation rights in the appellee. On October 19, 1965, a final judgment of divorce was entered. Previous to the entering of the final judgment of divorce, the appellant and her children took up permanent residence in the State of Maryland with the sanction of the California court.

On October 13, 1966, the appellee obtained a modification of the visitation provision. Further litigation between the parties is pending in the California courts relating to support.

Appellee filed in the Circuit Court for Prince George's County a "PETITION TO ENFORCE FOREIGN ORDER" on November 17, 1966, seeking enforcement of the October 13, 1966 California order relating to visitation rights. Appellant answered the amended petition on December 6, 1966, admitting jurisdiction in the Maryland court and asked that the appellee be denied visitation rights or if visitation rights be granted that appellee undergo a psychiatric examination; that the Department of Parole and Probation make a thorough investigation of appellee's activities; and that pro-

visions be made for the children's protection during visitation as a prerequisite thereto. On the same day appellant filed a "CROSS BILL OF COMPLAINT FOR INJUNCTION AND SUPPORT," accompanied by affidavit, asking: (1) that the appellee be enjoined "from coming into contact with the minor children"; or, (2) that if visitation is granted to the appellee the appellant's and children's welfare be protected; (3) that appellee be required to pay the arrearage of support under the California decree; and (4) that the court provide for adequate child support and counsel fees. Appellee then filed a motion to dismiss the cross-bill on the ground that the court lacked jurisdiction to hear it.

At the hearing held on December 22, the court dismissed the cross-bill for lack of jurisdiction, and without taking any testimony, passed an order on December 23, 1966, granting the appellee visitation periods on December 26 and 27, 1966.

The question before the Court is whether the courts of this State have jurisdiction relating to the protection and care of infants, domiciled in Maryland, where there is a subsisting order from a prior hearing in another state with original jurisdiction, awarding custody of the infants and setting forth the conditions of such custody and terms for their support.

The worthy chancellor felt that the full faith and credit clause, Article IV, § 1 of the Constitution of the United States, foreclosed the courts of this State from taking action, stating:

> "This Court determines that it is without jurisdiction to determine support in this matter because it is the responsibility of the Court of California to resolve this matter in the final determination of the matter which is presently before it and of which it has jurisdiction. The defendant here today was the original plaintiff there and is still the original plaintiff, and the petitioner here today is the original defendant. Thus there is no question that the Court there has that jurisdiction.
>
> "In addition thereto, the pertinent issue before this Court is custody and visitation of these two small children. And that court has made that determination

at a time wherein it had jurisdiction and had all of the parties before it. Therefore, the relief prayed in the cross-bill of complaint for injunction and support will be dismissed and the Court will extend full faith and credit to that portion of the decree of the court of California as provided in Article 4, Section 1 of the Federal Constitution. But because of the facts in this case and by the authority conferred upon me by the laws of the State of Maryland under Article 16, and because it is this Court's opinion that the orders—which I will emphasize and repeat for emphasis are only interlocutory orders—are indefinite as to the question of visitation, this member of the Court will attempt to interpret them because of the overwhelming desirability of every parent having the right to visit with his or her children."

It is a well-established principle of law that the state in which an infant is domiciled has jurisdiction over it. Maryland has so provided by statute, Art. 16, § 66(a), Code (1957), which is merely declaratory of equity jurisdiction, *Coleman v. Coleman,* 228 Md. 610, 613, 180 A. 2d 875, 877 (1962) ; cf. *Rethorst v. Rethorst,* 214 Md. 1, 133 A. 2d 101 (1957), and as a corollary to this proposition, as stated by this Court in *Berlin v. Berlin,* 239 Md. 52, 55, 210 A. 2d 380, 381 (1965), "the domicile of a minor child, in case his parents are divorced, is that of the parent to whom legal custody has been awarded. * * *." In *Rethorst,* it is interesting to note that Maryland upheld the jurisdiction of the California court in a custody case, in which the infant children involved were physically present with their mother in Maryland, although they were domiciled in California.

In the case at bar there is no dispute over the fact that the mother (appellant) and the infant children are not only physically present in Maryland but are domiciled here.

It is perhaps incumbent upon the Court to distinguish the case at bar from our opinion in *Berlin v. Berlin, supra,* wherein this Court, speaking through Judge Horney, adopted the "continuing jurisdiction rule." In that case at the time of the

original award of custody of the children to the mother, she was domiciled in Maryland and the children, who were never before the court, were residing in New York. The Maryland court in awarding custody did so subject to the further order of the court. Subsequently, the mother moved to New York and failed to comply with the terms of the decree concerning the visitation privileges accorded the father. The Maryland court, while the mother and children were in New York, modified the decree and gave custody to the father. It should be pointed out that this Court in *Berlin* made no attempt to rule that the courts of the State of New York did not, or would not, under proper circumstances have jurisdiction to decide custody by virtue of domicile. Indeed, Professor Stansbury in his article "Custody and Maintenance Law Across State Lines," 10 Law & Contemp. Prob., 819, 831-32 (1944), concludes:

> "A court of any state that has a substantial interest in the welfare of the child or in the preservation of the family unit of which he is a part, has jurisdiction to determine his custody, and this jurisdiction may exist in two or more states at the same time."

This Court, as well as the California courts, have also followed the rule that an award of custody is never absolute, but is always subject to modification. Art. 16, § 66(a), Code (1957) ; *Alston v. Thomas,* 161 Md. 617, 621, 158 A. 24, 25-26 (1932) ; *Sampsell v. Superior Court,* 197 P. 2d 739 (1948) ; *Stout v. Pate,* 261 P. 2d 788, (Dist. Ct. App. 1953).

We do not feel that the instant case calls for any determination under the full faith and credit clause, Article IV, § 1 of the Constitution of the United States, as to the extraterritorial effect of a decree of a sister state, for the reason that we believe that the allegations and accompanying affidavit supporting appellant's cross-bill were sufficient to require the chancellor to hear testimony as to a change of circumstances of the litigants and the infant children involved.

Authorities are generally agreed, including the California courts, that where a change of circumstances affecting the parties or the children has occurred since the filing of the original decree that the courts of the children's domicile have jurisdic-

tion to modify or change an award of custody and the constitutional mandate of full faith and credit, or, for that matter the principle of comity, need not apply. *Ford v. Ford*, 371 U. S. 187 (1962); *Kovacs v. Brewer*, 356 U. S. 604 (1958); *Sampsell v. Superior Court, supra; Stout v. Pate, supra.*

In *Sampsell*, the California Court placed this matter in its proper perspective using the following language, at p. 750:

> "If the decrees of California courts with respect to child custody are subject to modification or annulment in this state, they are likewise subject to modification or annulment in any state having jurisdiction over the subject matter, for such a decree 'has no constitutional claim to a more conclusive or final effect in the State of the forum than it has in the State where rendered.' (People of State of New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S. Ct. 903, 906, 91 L. Ed. 1133; see Harper, Conflict of Laws, 47 Col. L. Rev. 883, 907-909.)"

Also, in *Kovacs,* the Supreme Court of the United States said at p. 607:

> "Whatever effect the Full Faith and Credit Clause may have with respect to custody decrees, it is clear, as the Court stated in *Halvey*, 'that the State of the forum has at least as much leeway to disregard the judgment, to qualify it, or to depart from it as does the State where it was rendered.' 330 U. S., at 615."

See generally 2 Nelson, *Divorce and Annulment* (2nd Ed. rev. vol. 1961), § 15.33; 3 Nelson, *Divorce and Annulment* (2nd Ed. 1945), §§ 33.60, 33.61, 33.67.

The infant child by virtue of his domicile has a right to the protection which may be afforded by the sovereignty under which he resides. Although the state is not a party to custody or support proceedings yet it does stand as *parens patriae* when the authority of the courts are invoked to determine questions concerning the welfare and status of a child within its jurisdiction.

A review of the pleadings and attached exhibits in the instant

case shows that the decree of the California court relating to custody and support dated March 24, 1965, was some 20 months prior to the filing of the cross-bill by the appellant on December 6, 1966. The sworn affidavit accompanying the answer and cross-bill state grounds, which if proven, would substantiate that there had been changes in the circumstances of the litigants and the children. It was alleged that the appellee was some $2,850 in arrears in support of the children and that the appellant could no longer maintain them on the award for support rendered by the California court. The appellee, in a petition filed in the California court in August of 1966 requesting a modification of the interlocutory decree, stated he had suffered serious injuries as the result of an accident on March 29, 1965.

It is true that in October of 1966 the California court amended the visitation privileges set forth in the decree of March 24, 1965; however, the appellant was not present at that time and no testimony was taken.

The California court, twenty months before in its interlocutory decree of March 24, 1965, had recognized that the domestic climate was so charged with recrimination and hostility that it required an adult to be present when the father saw the children and that he bear the expense incurred by the presence of such an attendant. The father's sudden appearance on the Maryland scene, and the circumstances under which it occurred, would seem to have justified the chancellor hearing testimony to establish whether his presence was prompted by a sincere desire to exercise his visitation privileges with the children or constituted a form of harassment; as well as hearing testimony as to the status of the support for the children.

The worthy chancellor felt that his authority to act was circumscribed by the decree of the California court of March 24, 1965, prescribing the terms of custody and support of the children and the order of October 13, 1965, modifying the visitation privileges. For the reasons hereinbefore stated we do not agree with his conclusion.

> *Order reversed and remanded for further proceedings. Appellee to pay the costs.*